IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Shirley E. Elkins,

     Plaintiff,

    v.                     Case No. 2:08-cv-568

American International Special
Lines Insurance Company,

     Defendant.


OPINION AND ORDER

    This is an action brought by plaintiff Shirley E. Elkins against defendant American international Special Lines Insurance Company. On March 20, 2008, plaintiff filed a supplemental complaint pursuant to Ohio Rev. Code §3929.06 against the defendant in the Court of Common Pleas of Franklin County, Ohio. Plaintiff alleged that on January 31, 2008, she obtained a judgment against Chelsea Title Agency of Columbus, Inc. ("Chelsea Title") in the amount of $90,113.28, stemming from Chelsea Title's negligent failure to properly file a lien on her behalf. Plaintiff further alleged that since the defendant provided errors and omissions liability coverage to Chelsea Title, the defendant was liable for the damages awarded in her favor against Chelsea Title. In her prayer for relief, plaintiff demands judgment against the defendant in the amount of $90,113.28, plus pre-judgment and post-judgment interest, fees, costs, attorney's fees, and any other available relief.

    On June 11, 2008, the defendant filed a notice of the removal of the action to this court on the basis of diversity of citizenship. On October 9, 2008, plaintiff filed a motion to

remand the action to the Franklin County Common Pleas Court, arguing that diversity is lacking and that the jurisdictional amount in controversy has not been satisfied. On October 31, 2008, defendant filed a motion for summary judgment. Those motions are now before the court for a ruling.

I. Motion to Remand

A. Citizenship of the Parties

Under 28 U.S.C. §1332(a)(1), federal district courts have jurisdiction over actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The removal of an action to federal court based on diversity jurisdiction is proper only when complete diversity exists at the time of removal, that is, when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation. Coyne v. American Tobacco Co., 183 F.3d 488, 492 (6th Cir. 1999). The party seeking to bring the case into federal court bears the burden of establishing diversity jurisdiction. Certain Interested Underwriters at Lloyd's, London, England v. Layne, 26 F.3d 39, 41 (6th Cir. 1994); Her Majesty The Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989).

According to the supplemental complaint, plaintiff is a resident of Columbus, Ohio. Defendant is an Illinois corporation having its principal place of business in New York. See Motion for Summary Judgment, Ex. 2, Keane Aff. ¶ 2. Nonetheless, plaintiff argues that complete diversity is lacking because Chelsea Title is also an Ohio citizen.

Defendant correctly argues that Chelsea Title is not a party to this action. The supplemental complaint was filed pursuant to

Ohio Rev. Code §3929.06(A), which provides:

> (A)(1)  If a court in a civil action enters a final
> judgment that awards damages to a plaintiff for injury,
> death, or loss to a person or property of the plaintiff
> or another person for whom the plaintiff is a legal
> representative and if, at the time that the cause of
> action accrued against the judgment debtor, the judgment
> debtor was insured against liability for that injury,
> death, or loss, the plaintiff or the plaintiff's
> successor in interest is entitled as judgment creditor to
> have an amount up to the remaining limit of liability
> coverage provided in the judgment debtor's policy of
> liability insurance applied to the satisfaction of the
> final judgment.
>
> (2)  If, within thirty days after the entry of the final
> judgment referred to in division (a)(1) of this section,
> the insurer that issued the policy of liability insurance
> has not paid the judgment creditor an amount equal to the
> remaining limit of liability coverage provided in that
> policy, the judgment creditor may file in the court that
> entered the final judgment a supplemental complaint
> against the insurer seeking the entry of a judgment
> ordering the insurer to pay the judgment creditor the
> requisite amount.  Subject to division (C) of this
> section, the civil action based on the supplemental
> complaint shall proceed against the insurer in the same
> manner as the original civil action against the judgment
> debtor.

Ohio Rev. Code §3929.06(A)(1) and (2).  Section 3929.06 creates a
subrogation action, wherein the injured party stands in the shoes
of the insured against his or her insurer, and the statute may be
used only to bring insurers into an action.  See Doepker v. Everest
Indemnity Insurance Co., No. 5:07cv2456, 2008 WL 163606 *3
(N.D.Ohio Jan. 16, 2008)(the insurer is the only properly-named
defendant in an action under §3929.06); see also Ridge v. National
American Insurance Company, 46 F.3d 1131 (table), 1995 WL 11210 *1
(6th Cir. Jan. 11, 1995)(noting that complete diversity of
citizenship existed between the parties, stating "this Court has
previously recognized the propriety of bring a diversity action

3

based on section 3929.06.")(citing <u>Ayers v. Kidney</u>, 333 F.2d 812 (6th Cir. 1964)). Since Chelsea Title is not and cannot be a named defendant to the supplemental complaint, the fact that Chelsea Title is an Ohio citizen does not undermine diversity jurisdiction in this case.

This court further notes that diversity jurisdiction in this case is not impacted by 28 U.S.C. §1332(c)(1), which states that "in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen[.]" 28 U.S.C. §1332(c)(1). The term "direct action" as used in §1332(c)(1) refers to the situation where the injured party forgoes suing the tortfeasor and instead sues the tortfeasor's liability insurer directly on the issue of liability. <u>See</u> <u>Estate of Monahan v. American States Insurance Co.</u>, 75 Fed.App'x 340, 343 (6th Cir. Aug. 27, 2003); <u>Peterson v. TIG Specialty Ins. Co.</u>, 211 F.Supp.2d 1013, 1015 (S.D.Ohio 2002)(the term "direct action" is one in which the injured party is entitled to bring suit against the tortfeasor's liability insurer without joining the insured or first obtaining a judgment against him). This type of action is not permitted under §3929.06. Rather, §3929.06(A)(2) "does not authorize the commencement of a civil action against an insurer until a court enters the final judgment described in division (A)(1) of this section in the distinct civil action for damages between the plaintiff and an insured tortfeasor and until the expiration of the thirty-day period referred to in division (A)(2) of this section." Ohio Rev. Code §3929.06(B). Therefore, the instant case is not a "direct action" within the

4

meaning of §1332(c)(1) which would require imputing the citizenship of Chelsea Title to defendant, the insurer in this case.

B. Amount in Controversy

Plaintiff argues that the $75,000 amount-in-controversy requirement is not satisfied in this case. Plaintiff contends that although she requests damages in the amount of $90,113.28, her recovery may be limited to $15,113.28 due to the $75,000 retention in the liability insurance policy.

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)(footnotes omitted). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 289 (footnote omitted). The fact that the plaintiff may be unable to recover an amount over the jurisdictional limit does not establish bad faith or defeat jurisdiction. Id. Likewise, the fact that the complaint discloses the existence of a valid defense to the plaintiff's claim does not defeat jurisdiction. Id.

Where, as here, an action is filed in state court and then removed,

> [t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. For if such were the purpose suit would not have been instituted in the first instance in the state but in the federal court. It is highly unlikely that the parties would pursue this roundabout and troublesome method to get into the federal court by removal when by the same device the suit could be

> instituted in that court.  Moreover, the status of the
> case as disclosed by the plaintiff's complaint is
> controlling in the case of a removal, since the defendant
> must file his petition before the time for answer or
> forever lose his right to remove.  Of course, if, upon
> the face of the complaint, it is obvious that the suit
> cannot involve the necessary amount, removal will be
> futile and remand will follow.  But the fact that it
> appears from the face of the complaint that the defendant
> has a valid defense, if asserted, to all or a portion of
> the claim, or the circumstance that the rulings of the
> district court after removal reduce the amount
> recoverable below the jurisdictional requirement, will
> not justify remand.

Id. at 290-91 (footnotes omitted); see also Gafford v. General
Electric Co., 997 F.2d 150, 157 (6th Cir. 1993)(the "legal
certainty" standard applies to cases removed to federal court where
plaintiff's prayer for damages in the state suit exceeds the
federal amount-in-controversy requirement).

"The test for whether the jurisdictional amount has been met
considers whether the plaintiff can succeed on the merits in only
a very superficial way." Kovacs v. Chesley, 406 F.3d 393, 396 (6th
Cir. 2005).  While a court ruling on a motion for summary judgment
can examine defenses to the plaintiff's claim, a court considering
whether a dismissal or remand is warranted because of the failure
to satisfy the amount-in-controversy requirement cannot.  See id.
Where state law at least arguably permits the type of damages
claimed, the amount-in-controversy requirement will be satisfied
even if it is unlikely that the plaintiff can recover an amount
exceeding the jurisdictional requirement.  Id. at 397 (citing
Worthams v. Atlanta Life Ins. Co., 533 F.2d 994, 997 (6th Cir.
1976).  "[T]o deny diversity jurisdiction it is generally not
enough to show that the defendant will prevail on the merits.  Such
arguments are more appropriately made in support of a motion for

6

summary judgment." Id. (footnote omitted).

In the prayer for relief section of the complaint, plaintiff claims damages in the amount of $90,113.28 plus pre-judgment and post-judgment interest, fees, costs, and attorney's fees. That amount was presumptively claimed in good faith in the state court action. Plaintiff now argues that her claim does not exceed $75,000 because it is subject to the $75,000 retention in the liability policy. However, the retention is in the nature of a defense. In addition, defendant notes that even if the $75,000 retention applies to plaintiff's claim, plaintiff would still have to prove that the value of her claim exceeded $75,000 to recover the $15,113.28 she claims in damages over that amount. The amount-in-controversy requirement has been satisfied in this case.

C. Conclusion

The court concludes that the requirements for jurisdiction based on diversity of citizenship have been met in the instant case. Plaintiff's motion to remand (Doc. No. 18) is denied.

II. Motion for Summary Judgment

A. Standards

Defendant has filed a motion for summary judgment. The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact

7

is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986). _See_ _also_ _Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp._, 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that _Liberty Lobby_, _Celotex_ and _Matsushita_ effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. _Street v. J. C. Bradford & Co._, 886 F.2d 1472, 1476 (6th Cir. 1989). In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" _Id_. (quoting _Liberty Lobby_, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. _Id_. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" _Id_. (quoting _Matsushita_, 475 U.S. at 586). Moreover, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. _Id_.

B. Grounds for Motion

In moving for summary judgment, defendant relies on the provisions of the professional liability insurance policy under

8

which plaintiff seeks to recover. Defendant argues that notice of plaintiff's claim was not timely given as required under the terms of the policy. Defendant correctly notes that in defending against the supplemental complaint, defendant as the "insurer has and may assert as an affirmative defense against the judgment creditor any coverage defenses that the insurer possesses and could assert against the holder of the policy[.]" Ohio Rev. Code §3929.06(C)(1).

The policy does not contain a choice of law provision, and the parties do not discuss which state's law should apply. Plaintiff is an Ohio citizen, and defendant is deemed to be a citizen of both Illinois, its state of incorporation, and New York, the location of its principal place of business. See 28 U.S.C. §1332(c)(1). As the forum state, Ohio's choice-of-law provisions apply if a choice-of-law determination is necessary. Rosen v. Chrysler Corp., 205 F.3d 918, 921 n. 2 (6th Cir. 2000). However, where the jurisdictions involved would apply the same law, or would reach the same result under their respective laws, a choice-of-law determination is unnecessary and the laws of the forum state apply. Mecanique C.N.C., Inc. v. Durr Environmental, Inc., 304 F.Supp.2d 971, 957 (S.D.Ohio 2004)(citing Akro-Plastics v. Drake Indus., 115 Ohio App.3d 221, 685 N.E.2d 246, 248 (1996)). Since this court's research has disclosed that Ohio, New York and Illinois would all apply like rules of contract interpretation in this case, and since the outcome of this case would be the same regardless of which state's law is applied, Ohio law will be applied in this opinion.[1]

_____

[1]Since the policy was obtained through an insurance broker located in Cleveland, Ohio, on behalf of insureds located in Ohio, it is likely that Ohio's choice of law rules would also result in the application of Ohio law. See Nationwide Mutual Insurance Co. v. Ferrin, 21 Ohio St.3d 43, 44, 487 N.E.2d 568

Under Ohio law, the interpretation of an insurance contract is a question of law to be decided by the court. <u>Leber v. Smith</u>, 70 Ohio St.3d 548, 553, 639 N.E.2d 1159 (1994). The role of a court is to determine the intentions of the parties and to construe the contract in a manner that effectuates that intent. <u>Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.</u>, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). When the language used is clear and unambiguous, a court must enforce the contract as written giving words used in the contract their plain and ordinary meaning. <u>Cincinnati Indemn. Co. v. Martin</u>, 85 Ohio St.3d 604, 605, 607, 710 N.E.2d 677 (1999).

Defendant argues that the policy in question is a "claims made" policy, and that timely notice of plaintiff's claim was not given to the defendant during the policy period as required under the terms of the policy. A claims made policy provides coverage for claims brought against the insured only during the life of the policy. <u>United States v. A.C. Strip</u>, 868 F.2d 181, 184 (6th Cir. 1989); <u>C.V. Perry & Co. v. West Jefferson</u>, 110 Ohio App.3d 23, 26, 673 N.E.2d 613 (1996); <u>Mueller v. Taylor Rental Center</u>, 106 Ohio App.3d 806, 810, 667 N.E.2d 427 (1995)("The very essence of a claims-made policy requires the claim to be first made during the policy period."). "Claims made policies, unlike occurrence policies, are designed to limit liability to a fixed period of time." <u>A.C. Strip</u>, 868 F.2d at 187; <u>Mueller</u>, 106 Ohio App.3d at 811 ("The reason the insurance industry went to claims-made

---

(1986)(the law of the state where the contract is made governs interpretation of the contract); <u>Gries Sports Enterprises, Inc. v. Modell</u>, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984)(noting factors to be considered, including the place of contracting and contract negotiations, place of performance, location of the subject matter of the contract, and the places of incorporation and businesses of the parties).

policies is to clearly define the period for which they were liable rather than to be liable indefinitely for an occurrence which may have occurred years before."). Professional liability policies (such as the professional liability policy in the instant case) are commonly claims made policies because malpractice by a professional may not lead to the assertion of a claim until years after expiration of the insurance policy. <u>Federal Deposit Insurance Corp. v. Mijalis</u>, 15 F.3d 1314, 1330 (5th Cir. 1994).

Claims made policies typically require the insured to give prompt notice to the insurer of any claims asserted against the insured. <u>Id</u>. Generally speaking, a "notice provision is a requirement that goes to the very essence of an insurance contract." <u>Felicity-Franklin Local School Dist. Bd. of Educ. v. Nationwide Mutual Ins. Co.</u>, 56 Ohio Misc.2d 19, 20, 565 N.E.2d 618 (Ohio Com. Pl. 1989). Where an insurance policy contains a provision requiring notice of loss, such notice is a condition precedent to a right of action on the policy. <u>Moyer v. Merchants Fire Ins. Co.</u>, 72 Ohio Law Abs. 209, 133 N.E.2d 790, 791 (Ohio Com. Pl. 1952)(citing <u>Kornhauser v. National Surety Co.</u>, 114 Ohio St. 24, 150 N.E. 921 (1926)).

"The notice requirements in claims made policies allow the insurer to 'close its books' on a policy at its expiration and thus to 'attain a level of predictability unattainable under standard occurrence policies.'" <u>Mijalis</u>, 15 F.3d at 1330 (quoting <u>Burns v. International Ins. Co.</u>, 709 F.Supp. 187, 191 (N.D.Cal. 1989)). "Thus, notice provisions are integral parts of claims made policies." <u>Id</u>.; <u>see</u> <u>also</u> <u>Asp v. Ohio Medical Transportation, Inc.</u>, No. 00AP-958 (10th Dist. unreported), 2001 WL 721854 at *3 (Ohio App. June 28, 2001)("Under a claims-made policy, coverage exists

only when the insured presents a claim to the insurer within the policy period, or an extended period as allowed by the policy.... [A] claims-made policy is triggered by the reporting of a claim."); <u>Mueller</u>, 106 Ohio App.3d at 810 ("'If the insured does not give notice within the contractually required time period, in the instant case during the policy period, there is simply no coverage under the policy.... If the claim is not reported during the policy period, no liability attaches.'")(quoting <u>Harrisburg v. International Surplus Lines Ins. Co.</u>, 596 F.Supp. 954, 961 (M.D.Pa. 1984)). As the Sixth Circuit noted in <u>A.C. Strip</u>, "To allow coverage beyond that period would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed." 868 F.2d at 187 (holding that insurer was not liable for claims not reported to the insurer during the period of coverage of a claims made policy).

The policy at issue in this case is Policy Number 966-16-21, issued by the defendant. Motion for Summary Judgment, Ex. 3. The named insured is GT & T Corporation, of Cleveland, Ohio, and Chelsea Title is listed as an additional insured in Endorsement #8. Ex. 3, pp. 1, 22. The producer of the policy is identified as Todd Associates, Inc., located at 5875 Landerbrook Drive, Cleveland, Ohio. Ex. 3, p. 2.

The first page of the policy contains the following language:

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO US DURING THE POLICY PERIOD.

Ex. 3, p. 1. The terms "we, us or our" as used in the policy are defined as meaning "the insurer issuing this policy," that being

defendant American International Specialty Lines Insurance Company. Ex. 3, Section II.P. The Declarations page is also headed with the language "AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY ... (hereinafter we, us or our)." The term "claim" is defined as "a demand for money or services, including a suit, arising from your wrongful act." Ex. 3, Section II.B. The term "policy period" is defined as the period beginning on the effective date in Item 2 of the Declarations and ending on either the expiration date identified in Item 2 or the effective date of the cancellation of the policy. Ex. 3, Section II.I. Item 2 states that the policy was in effect from December 31, 2006, through December 31, 2007. Ex. 3, p. 1.

The policy further states:

> We shall pay on your behalf those amounts, in excess of the retention, you are legally obligated to pay as damages resulting from a claim first made against you and reported to us during the policy period or Extended Reporting Period (if applicable) for your wrongful act in rendering or failing to render professional services for others, but only if such wrongful act first occurs on or after the retroactive date and prior to the end of the policy period.

Ex. 3, Section I.A.

The policy also contains the following provisions regarding the making of a claim:

> A. What You Must Do in the Event of a Claim
>
> Before coverage will apply, you must notify us in writing of any claim against you as soon as practicable during the policy period or Extended Reporting Period (if applicable). You must also:
>
> 1. immediately record the specifics of the claim and the date you received it; and
>
> 2. send copies of all demands, suit papers, or other

legal documents you receive, as soon as possible to us in
c/o AIG Technical Services, Inc., Professional Liability
Division, at our address indicated in the Declarations.

Ex. 3., Section VI.A.  The address indicated in the Declarations is
175 Water Street, New York, NY 10038.

The policy also includes a provision regarding extended
reporting:

> If we or the named insured shall cancel or elect not to
> renew this policy, you shall have the right following the
> effective date of such cancellation or nonrenewal to a
> period of sixty (60) days (herein referred to as the
> "Automatic Extended Reporting Period") in which to give
> written notice to us of claims first made against you
> during the Automatic Extended Reporting Period for any
> wrongful act occurring prior to the end of the policy
> period and otherwise covered by this policy.

Ex. 3, Section Endorsement #7.  This endorsement also authorized an
optional extended reporting period of up to one year following the
effective date of the cancellation or non-renewal of the policy,
conditioned upon notice of this election and payment of an
additional premium of up to 200% of the full annual premium being
given to the insurer within thirty days of the effective date of
cancellation or non-renewal of the policy.  However, there is no
evidence that the insured accepted this offer or paid the required
premium for the one-year extension.

The language of the policy is clear and unambiguous.  It
requires that a claim be "FIRST MADE AGAINST YOU AND REPORTED IN
WRITING TO US DURING THE POLICY PERIOD."  Ex. 3, p. 1.  The policy
requires both that the claim be first made against the insured
during the policy period, and that the claim be reported to the
defendant during the policy period, that being December 31, 2006,
through December 31, 2007.  The period for asserting a claim and
notice was extended for an additional sixty days to February 29,

14

2008, under the terms of the automatic extended reporting period.

Defendant has submitted evidence that it did not receive notice of plaintiff's claim until May 20, 2008, a date outside the policy period and the automatic extended reporting period. Defendant relies on the affidavit of Martha S. Keane, Complex Claims Director for AIG Domestic Claims, Inc., which manages claims for the defendant. Motion for Summary Judgment, Ex. 2. Ms. Keane stated that Exhibit 3 is an authentic copy of the policy issued to GT & T Corporation, effective December 31, 2006 through December 31, 2007. Keane Aff., ¶ 4. Ms. Keane further stated that according to the claims records, the first notice which defendant had of plaintiff's claim against Chelsea Title was on May 20, 2008, when defendant was served with a summons issued on May 13, 2008, by the Franklin County Court of Common Pleas in Case Number 07-CV-010301, with a copy of the supplemental complaint filed in that court. Keane Aff., ¶ 6. Ms. Keane also stated that according to the claims records, Chelsea Title never reported plaintiff's claim to the defendant. Keane Aff., ¶ 7.

Plaintiff's memorandum contra the motion for summary judgment includes the December 8, 2008, affidavit of Robert B. Holman, former counsel for Chelsea Title. In his affidavit, Mr. Holman stated that "on November 11, 2007, a claim was made to the Errors and Omissions carrier for Chelsea Title Agency of Columbus, Inc., AIG Domestic Claims, Inc." Holman Aff., ¶ 2. He further stated that "on May 27, 2008, a claim acknowledgment letter was received in this office" which he attached to his affidavit as Exhibit A. Holman Aff., ¶ 4. This letter, dated May 22, 2008, is a letter from Jeanette Lee-Sam of AIG Domestic Claims Inc. addressed to Paul Knodel of GT & T Corporation, an insured under policy number 966-

15

16-21. This letter referred to plaintiff's claim under that policy number, and stated that "AIG Domestic Claims, Financial Lines, on behalf of A.I. Surplus, acknowledges receipt of correspondence concerning the noted matter." The letter further stated that a file had been established under the policy with the understanding that "all rights are mutually reserved." Plaintiff argues that Mr. Holman's affidavit is sufficient to create a genuine issue of fact as to whether defendant received notice of plaintiff's claim in November of 2007.

However, defendant has submitted a reply brief which includes a supplemental affidavit from Mr. Holman dated December 12, 2008. In his supplemental affidavit, Mr. Holman stated that Chelsea Title became a defunct corporation prior to November, 2007. Holman Supp. Aff., ¶ 3. He further stated that Todd Associates, Inc., was Chelsea Title's insurance broker while Chelsea Title was in business. Holman Supp. Aff., ¶ 5. Mr. Holman stated that on November 15, 2007, he received a fax from Todd Associates. This fax indicated that Todd Associates had received a certified letter from plaintiff's counsel, dated November 8, 2007, which stated that a lawsuit had been filed by plaintiff against Chelsea Title. Holman Supp. Aff. ¶ 6. Copies of the faxed documents, including the cover sheet, letter from plaintiff's counsel, and a certificate of liability insurance, are attached to the affidavit as Exhibit 1.

The November 8, 2008, letter from plaintiff's counsel is addressed to "Insurer for Chelsea Title Agency of Columbus, Inc. c/o Todd Associates, Inc." The letter stated that it is a "NOTICE OF CLAIM ON ERRORS AND OMISSIONS POLICY FOR THE INSURED, CHELSEA TITLE INSURANCE AGENCY OF COLUMBUS, INC." relating to "3537 Sellers Drive, Millersport, OH/2nd Mortgage of Shirley Elkins." The letter

16

also referred to a time-stamped copy of a civil action filed on behalf of plaintiff which set forth the facts of the claim and a certificate of liability insurance, which were represented as being enclosed with the letter. The faxed documents included a certificate of liability insurance which identified Todd Associates, Inc. as the producer, GT & T Corporation as the insured, Chelsea Title as the certificate holder, and defendant as the insurer. The fax cover sheet contained a handwritten note purportedly authored by Sharie Radon of the Claims Department at Todd Associates, addressed to an unidentified person named "Barb." Ms. Radon asked if she should be submitting the letter from plaintiff's counsel to AIG. Ms. Radon also asked "Barb" if her office received a copy of the complaint, and requested that a copy be forwarded to Todd Associates' office. This note suggests that, contrary to the statement in counsel's letter, a copy of plaintiff's complaint may not have been sent to Todd Associates.

Mr. Holman further stated in his supplemental affidavit that because Chelsea Title was defunct, it did not authorize him to respond to the fax or to report plaintiff's suit to defendant. Holman Supp. Aff. ¶ 7. Mr. Holman further stated that on May 27, 2008, Chelsea Title received a letter dated May 22, 2008, from AIG Domestic Claims, Inc., acknowledging "receipt of correspondence" and identifying plaintiff as the claimant. This letter, Ex. 2 to the affidavit, was the same letter attached to Mr. Holman's affidavit of December 8, 2008. Holman Supp. Aff. ¶ 8. Mr. Holman indicated that his statement in the December 8, 2008, affidavit that "on November 11, 2007, a claim was made to the Errors and Omissions carrier for Chelsea" was based solely on his receipt of the November 15, 2007, fax from Todd Associates and the May 22,

2008, letter from AIG Domestic Claims, Inc. Holman Supp. Aff. ¶ 9. Mr. Holman stated that he otherwise has no personal knowledge as to how or when, if ever, plaintiff's suit against Chelsea Title was reported to defendant. Holman Supp. Aff. ¶ 10.

Defendant also submitted a supplemental affidavit of Ms. Keane, who stated that she has custody of defendant's records regarding plaintiff's claim against Chelsea Title. Those records disclosed that defendant received its first notice of plaintiff's claim on May 20, 2008, when Todd Associates faxed the summons and supplemental complaint issued on May 13, 2008, in Case Number 07-CV-010301 in the Franklin County Common Pleas Court. Keane Supp. Aff. ¶¶ 3-4. The records also showed that on May 22, 2008, AIG Domestic Claims sent the letter to Mr. Knodel discussed above. Keane Supp. Aff. ¶ 5.

Mr. Holman's affidavit of December 8, 2008, is insufficient to demonstrate a genuine issue of fact on the question of whether defendant received notice of plaintiff's claim in November, 2007. Mr. Holman's supplemental affidavit clarifies his earlier statements and reveals that Mr. Holman simply assumed, based on the fax from Todd Associates and the defendant's letter of May 22, 2008, that Todd Associates had forwarded the information concerning plaintiff's claim to defendant or AIG Domestic Claims. Mr. Holman acknowledged in his supplemental affidavit that he had no personal knowledge as to how or when, if ever, plaintiff's claim was ever reported to defendant. No affidavit or other evidence from any person employed at Todd Associates has been submitted, and there is no evidence that Todd Associates, Mr. Holman, or anyone in those offices gave notice of plaintiff's claim to defendant within the reporting period defined by the policy.

The remaining issue is whether the November 8, 2007, letter of plaintiff's counsel to Todd Associates constituted sufficient notice to defendant.   The policy states, "Before coverage will apply, you must notify us in writing of any claim against you as soon as practicable during the policy period[.]"   Ex. 3, Section VI.A.   The term "you" is defined as meaning the named insured, a subsidiary of the named insured, or officers, directors, trustees or employees of the insured.   Ex. 3, Section II.P.   Here, there is no evidence that the insured or any of its employees notified defendant of the claim.

Assuming <u>arquendo</u> that notice of a claim by the injured party as a third-party beneficiary of the policy would suffice,[2] Ohio law provides:   "A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."   Ohio Rev. Code §3929.27.   However, the Ohio Supreme Court has held that this statute is simply a "codification of the common-law rule that 'the acts of an agent within the scope of what he is employed to do and with reference to a matter over which his authority extends are binding on his principal.'"   <u>Damon's Missouri, Inc. v. Davis</u>, 63 Ohio St.3d 605, 609, 590 N.E.2d 254 (1992)(quoting <u>Saunders v. Allstate Ins. Co.</u>, 168 Ohio St. 55, 58-59, 151 N.E.2d 1 (1958)).   The statute identifies the insurance company as the party chargeable with any

---

[2]<u>See</u> 58 Ohio Jur. 3d Insurance §1043, pp. 526-27 (2005)(concluding, without citing any case authority, that since §3929.06 subrogates an injured person to the rights of the insured under a policy of liability insurance, an injured person may perform the conditions of the policy requiring notice in order to prevent lapse of the policy through the failure of the insured to perform such conditions).

responsibility for knowledge or acts of its soliciting agent, but is not determinative of the scope of the agent's authority.  Id.; Hardrives Paving and Construction Co., Inc. v. Hartford Steam Boiler Inspection and Ins. Co., 137 Ohio App.3d 270, 283, 738 N.E.2d 463 (2000)(§3929.27 does not mandate that notice of loss given to an insurance agent is sufficient to constitute notice to the insurer).

Thus, even if an insurance broker is the agent of the insurance company for purposes of soliciting and procuring the policy, that would not necessarily make the broker the agent of the insurance company for the purpose of receiving notices of suits and claims.  Crown Controls Corp. v. Columbia Casualty Co., No. 2-83-33 (3rd Dist. unreported), 1985 WL 7220 at *4 (Ohio App. Oct. 3, 1985). In Myers v. John Hancock Mut. Life Ins. Co., 108 Ohio St. 175, 140 N.E. 504 (1923), the Ohio Supreme Court addressed the issue of whether a physician employed by the insurer to examine the insured as part of the application process for a life insurance policy was an agent of the insurer for purposes of receiving notice of the subsequent deterioration of the applicant's health condition following the initial qualifying examination by the physician but before the policy was approved by the insurer.  The court noted that the physician's sole duty to the company was to perform the medical examination required as part of the application process. Id. at 180.  The court stated:

> [E]xcept where an agent is expressly delegated to receive notice, or is referred to as one to whom notice may be given, or where the agent is placed in such a position of general authority that notice to him will be notice to his principal, because it must be determined to be within his authority to receive it, notice to an agent binds the principal only because the receipt thereof can be deemed an incident to the act which the agent is authorized to

> perform. It would seem perfectly obvious that a principal cannot be bound by any knowledge or information coming to an agent who had no duty or obligation to communicate such facts to the principal, and certainly not as to any knowledge or information coming to an agent who had no further authority to represent the principal, and no further duties whatever to perform with reference to the transaction in which he had been engaged.

Id. at 181-182. The court held that the physician was not an agent of the company for purposes of notice of the information the physician received after the examination. Id. at 184.

"[W]hen an insured gives notice of a potential claim to a local insurance agent, such notice may sometimes be imputed to the parent insurance company under a theory of constructive notification if the agent was acting within the scope of his apparent authority in the context of the agency relationship." Hardrives Paving, 137 Ohio App.3d at 282. For a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and that the person dealing with the agent knew of those facts and, acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority. Master Consolidated Corp. v. BancOhio Natl. Bank, 61 Ohio St.3d 570, Syllabus, 575 N.E.2d 817 (1991).

Notice to an agent who does not have or is not shown to have authority to receive such notice is not notice to the insurer. Nicholas v. McColloch-Baker Ins. Serv., Inc., No. 2006 CA 30 (2nd Dist. unreported), 2007 WL 1098672 at *4 (Ohio App. April 13, 2007)(insurer not liable where there was no evidence that insurer

held agent out as an entity authorized to accept notice of a claim; it is the acts of the insurer, not of the agent, which determine the existence of an agency); <u>Moyer</u>, 133 N.E.2d at 791-193 (holding that notice to an agent was not notice to the insurer where policy required the insured to "give immediate written notice to this company of any loss"); <u>Pateras v. Standard Accident Ins. Co.</u>, 37 Ohio App. 383, 387, 174 N.E. 620 (1929)(insurance agent who was authorized to procure and deliver a policy of insurance has no authority to receive notice of an accident under the policy unless such authority is given the agent by the insurer, either expressly or impliedly).

In the instant case, the policy requires that notice be "REPORTED IN WRITING TO US" and further states: "Before coverage will apply, you must notify us in writing of any claim against you as soon as practicable during the policy period or Extended Reporting Period (if applicable). Ex. 3, p.1 and p. 8, Section VI. A. The policy further specified that information concerning the claim was to be sent to the defendant c/o AIG Technical Services, Inc., Professional Liability Division, at defendant's address given in the Declarations. Ex. 3, p. 8, Section VI.A. The terms "we, us or our" as used in the policy are defined as meaning "the insurer issuing this policy," that being the defendant. Ex. 3, p. 5, Section II.P. In <u>Raby v. American Int'l Specialty Lines Ins. Co.</u>, 268 Fed.App'x 566, 567 (9th Cir. Feb. 28, 2008), the court considered a policy issued by defendant which contained comparable language and held that the language requiring notice to "us," defined as the defendant, "made it clear" that notice to the insurance agent was not sufficient. The Ninth Circuit further concluded that there was no evidence that the defendant had acted

in such a way as to clothe the agent with apparent authority to accept notice of claims. Likewise, in this case no evidence has been submitted that defendant expressly or impliedly held Todd Associates out to the public as being authorized to accept notice of claims on behalf of defendant.

There is no evidence from which a reasonable jury could find that Todd Associates was an agent of the defendant for purposes of accepting notice of claims, and the November, 2007, letter of plaintiff's counsel to Todd Associates was not sufficient to satisfy the notice requirement under the policy.

C. Conclusion

This court concludes that no genuine issue of material fact has been shown to exist in regard to whether timely notice was given under the terms of the policy, and defendant is entitled to summary judgment due to plaintiff's failure to give timely notice. Defendant's motion for summary judgment (Doc. No. 20) is granted. The clerk shall enter final judgment in favor of the defendant and against the plaintiff on plaintiff's claim.

Date: April 28, 2009            s/James L. Graham
                                James L. Graham
                                United States District Judge